1  MICHAEL S. HORIKAWA (SBN 267014)
2     michael.horikawa@pillsburylaw.com
   PILLSBURY WINTHROP SHAW PITTMAN LLP
3  725 South Figueroa Street, 36th Floor
4  Los Angeles, CA  90017
   Telephone:  213.488.7100
5  Facsimile:   213.629.1033

6
   CHRISTOPHER KAO (SBN 237716)
7     christopher.kao@pillsburylaw.com
   DAVID J. TSAI (SBN 244479)
8     david.tsai@pillsburylaw.com
9  BROCK WEBER (SBN 261383)
      brock.weber@pillsburylaw.com
10 ALEKZANDIR MORTON (SBN 319241)
11    alekzandir.morton@pillsburylaw.com
   JOHN J. STEGER (SBN 341299)
12    john.steger@pillsubyrlaw.com
13 PILLSBURY WINTHROP SHAW PITTMAN LLP
   Four Embarcadero Center, 22nd Floor
14 San Francisco, CA  94111-5998
15 Telephone:  415.983.1000
   Facsimile:   415.983.1200
16

17 Attorneys for Plaintiff
   Playvuu, Inc.
18

19

20            **IN THE UNITED STATES DISTRICT COURT**

21           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

22

| 23  Playvuu, Inc., a Delaware Corporation, | Case No. |
|---|---|
| 24                Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| 25       v. | |
| 26  Snap, Inc., a Delaware Corporation, | **JURY TRIAL DEMANDED** |
| 27                Defendant. | |

28

Plaintiff Playvuu, Inc. ("Playvuu" or "Plaintiff") hereby asserts the following claims for patent infringement against Defendant Snap, Inc. ("Snap" or "Snapchat" or "Defendant"), and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

2. Snap has infringed and continues to infringe one or more claims of Playvuu's U.S. Patent No. 10,931,911 ("the '911 Patent").

3. Snap has induced and continues to induce infringement of one or more claims of the '911 Patent.

4. Playvuu is the legal owner of the '911 Patent, which was duly and legally issued by the United States Patent and Trademark Office ("USPTO"). Playvuu seeks injunctive relief and monetary damages.

## THE PARTIES

5. Playvuu, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1312 Aviation Blvd., #103, Redondo Beach, California 90278.

6. On information and belief, Snap, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 3000 31st Street, Santa Monica, California 90405.

## JURISDICTION AND VENUE

7. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

8. This Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

9. Snap is subject to this Court's personal jurisdiction as its principal place of business is in this District, and it committed acts giving rise to this action within and/or directed to this District and has established minimum contacts within this

District such that the exercise of jurisdiction over Snap would not offend traditional notions of fair play and substantial justice.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Snap has committed acts of infringement in this District and its principal place of business is in this District.

## THE ASSERTED PATENTS

11. The '911 Patent, titled "Creating and Disseminating of User Generated Content Over a Network," was filed on January 15, 2019, as a continuation of Application No. 20120017150, filed on November 23, 2010. The '911 Patent issued on February 23, 2021. Shane Pollack is the sole inventor of the '911 Patent. A true and correct copy of the '911 Patent is attached as **Exhibit A**.

12. Playvuu is the owner of all rights, title, and interest in and to the '911 Patent, with the full and exclusive right to bring suit to enforce it. The '911 Patent is valid and enforceable under United States patent laws.

## PLAYVUU'S HISTORY AND PATENTED TECHNOLOGY

13. Playvuu, originally known as MySongToYou, Inc., was founded in 2009 by its Chief Executive Officer (CEO), Shane Pollack. Prior to founding Playvuu, Mr. Pollack worked as a writer, director, and film producer.

14. When he was just 16 years old, Mr. Pollack authored a young adult novel, "Baseball's Big Starr." After "Baseball's Big Starr" was published, Mr. Pollack did a national book tour at Borders and Barnes & Noble bookstores.

15. Mr. Pollack later created a television show, "Central High," and served as writer and producer of the show, which aired on HBO Family. Through the show, Mr. Pollack helped launch the careers of Grammy award winning artist Ashanti and renowned actress Leighton Meester. "Central High" also featured Football Hall of Fame Inductee Reggie White. As a result of his work on the show, HBO named Mr. Pollack one of the ten most promising filmmakers in the U.S.

16. Mr. Pollack also created and directed a film for HBO Family, "The Greatness of the Game," in which he worked with the New York Yankees and the Baseball Hall of Fame.

17. In the two years that followed, Mr. Pollack filmed a few more projects, including non-profit mental health Public Service Announcements starring Martin Sheen and a short film in 2001 for which PDI/DreamWorks contributed to the special effects. This film won an Artistic Excellence Award at the Atlantic City Film Festival. Additionally, Mr. Pollack was the only person who was not a DreamWorks employee to have a film premiere at the DreamWorks Film Festival.

18. Following his successful career in the television and film industry, Mr. Pollack launched a career as a pop rapper. Mr. Pollack was trained by hip hop pioneers, including Doug E. Fresh, who had mentored other rappers including Sean Combs, also known as Diddy. As a protégé of Doug E. Fresh, Mr. Pollack spent considerable time enmeshed in the music industry. Mr. Pollack met with executives from Warner Music and Def Jam, and spent time with artists such as Diddy, 50 Cent, Ne-Yo, LL Cool J, and a myriad of others. Mr. Pollack released two studio albums, "Never Peak" released in 2002 under the moniker Mad Philosopher and the self-titled album "Shane" released in 2007. Mr. Pollack focused his rap career on promoting positive messages through his fun, up-tempo songs, which omitted any reference to violence, alcohol, drugs, or profanity.

19. An important part of Mr. Pollack's music career was philanthropy. Along with the launch of his first studio album, Mr. Pollack started the Pen and Pad Foundation, an organization created to give children the tools to get into creative writing from a young age. During his rap career, Mr. Pollack toured France, where he focused on playing charity shows, including shows at orphanages and the biggest clubs in Southern France. Mr. Pollack moved to Los Angeles in 2006 to do a Children's Hospital Tour of Southern California with his back-up dancers from UCLA. They frequently performed at The Children's Hospital of Orange County

and The Children's Hospital of Los Angeles.  Even today—more than fifteen years later—Mr. Pollack continues to work with The Children's Hospital of Los Angeles on fundraising and philanthropy.

20.  Based on his experience in the film and music industries, Mr. Pollack founded MySongToYou, a platform that allowed anyone, regardless of technical proficiency, to easily create music and music videos.

21.  Mr. Pollack founded MySongToYou in 2009 to democratize music creation by creating a platform that anyone could use to create professional songs and accompanying music videos with creative overlays.  While developing MySongToYou, Mr. Pollack built a team of advisors and a management team and also secured funding for the company.

22.  To protect its intellectual property, MySongToYou applied for a patent on November 23, 2010.  This patent application ultimately led to the issuance of the '911 Patent.

23.  MySongToYou later rebranded as Playvuu, Inc. and refocused its efforts on creating a mobile platform where users could easily edit and share videos of themselves.  The platform featured one-click editing that allowed users to add backgrounds and foregrounds, animations, filters, and special effects.  With more focus on video, Playvuu added to its team former and current executives from Disney, Gap, Old Navy, DreamWorks, VitaminWater, ESPN, Roc Nation, Hyatt, eBay, Samsung, Sony and Mattel, among others.  At the time, Playvuu was the first of this kind of mobile application.  These types of tools had never before been provided to users through a mobile application.  Today, such technology has since been widely adopted.

## ACTS GIVING RISE TO THIS ACTION

24.  On Wednesday, October 5, 2016, then-Perkins Coie LLP Partner Michael Glaser introduced Mr. Pollack to Steve Hwang, Director of Operations and Strategy at Snap, Inc.  Mr. Hwang conveyed that Snap was interested in learning

more about Playvuu as soon as possible. Mr. Hwang immediately set up a meeting for the following Monday (October 10, 2016) for Mr. Pollack to come and present the Playvuu App at Snap's headquarters in Venice Beach. Mr. Pollack believed that the purpose of this meeting was to discuss the possibility of Snap acquiring the technology developed by Playvuu.

25. On October 10, 2016, Mr. Pollack brought then-Playvuu Chief Operating Officer (COO) Adam Sexton to attend the meeting at Snap's headquarters. On Snap's side, Mr. Hwang was joined by Dena Gallucci, a senior manager at Snap. At the meeting, Mr. Pollack demonstrated the Playvuu App's features and discussed many of the ideas described in the '911 Patent. He provided a video demonstration of the technology and provided additional information about the features in a PowerPoint presentation. Among the features of the Playvuu App which Mr. Pollack demonstrated were the overlay and augmented reality features. Mr. Pollack told Mr. Hwang and Ms. Gallucci that the technology he developed was being patented. Mr. Hwang and Ms. Gallucci spent considerable time at the meeting asking questions about the features in the Playvuu App. Referencing the Playvuu App features, Ms. Gallucci stated "Evan would love this," referring to Snap's founder and CEO, Evan Spiegel. Ms. Gallucci and Mr. Hwang then asked for more information about the overlay and augmented reality features.

26. At their request, on October 17, 2016, Mr. Pollack emailed Mr. Hwang and Ms. Gallucci the PowerPoint presentation he had presented during the October 10, 2016 meeting, along with the additional information requested by Snap regarding the overlay and augmented reality technology Playvuu had developed. However, within hours of emailing the presentation and other written materials, Mr. Pollack surprisingly received a curt reply thanking him for sending the presentation but also stating that Snap "didn't see a fit" for Playvuu's technology.

27. Despite Ms. Gallucci's email to Mr. Pollack stating that Snap "didn't see a fit" for Playvuu's technology, over the months and years after the October 10,

2016 meeting, Snap implemented many of the Playvuu App features presented by Mr. Pollack in its Snapchat App. As an example, in its July 5, 2017 update, Snap added a feature to its Snapchat App which allows users to add similar overlays, filters, and special effects to their photos and videos created using the SnapChat App.

28. Mr. Pollack has since given notice to the public of the '911 Patent by listing the invention on Playvuu's website (www.playvuu.com/). Many of the features covered by the '911 Patent are being infringed by at least Snap's Snapchat App.

**COUNT 1: INFRINGEMENT OF U.S. PATENT NO. 10,931,911**

29. Playvuu incorporates by reference and re-alleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

30. Snap has directly infringed, and continues to infringe, the claims of the '911 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, and/or selling products, such as the Snapchat App, that satisfy each and every limitation of one or more claims of the '911 Patent.

31. Snap has indirectly infringed, and continues to indirectly infringe, one or more claims of the '911 Patent by knowingly and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by providing an infringing product to its customers or other third parties. For example, Snap, with knowledge that the Snapchat App infringes the '911 Patent, at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '911 Patent by providing the Snapchat App to end users. Snap provides Snapchat App user guides and documentation on their website that instruct users how to use the Snapchat App.[1]

---

[1] *See* https://support.snapchat.com/en-US/a/capture-a-snap (last accessed on June 1, 2022).

32.     As a non-limiting example, the Snapchat App practices the method of at least Claim 1 of the '911 Patent.  The description of infringement is included in a non-limiting claim chart attached as **Exhibit B**.  Playvuu reserves the right to modify this description, including, for example, based on information about the Snapchat App or Snap's other products that Playvuu obtains during discovery.

33.     Snap's infringement has damaged and will continue to damage Playvuu, which is entitled to recover the compensatory damages resulting from Snap's wrongful acts in an amount to be determined at trial, including but not limited to lost profits, Snap's profits, disgorgement, and in any event no less than a reasonable royalty.

34.     At least as of the filing of this Complaint, Snap is on notice that it is infringing the '911 Patent.  Any infringement after notice is willful.

35.     Snap's infringement has caused, and will continue to cause, irreparable injury to Playvuu, for which damages are an inadequate remedy, unless Snap is enjoined from any and all activities that would infringe the claims of the '911 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests:

A. A Judgment that Snap has infringed, infringes, and continues to infringe, one or more claims of the '911 Patent, literally and/or under the doctrine of equivalents;

B. A Judgment that Snap has actively induced, and continues to actively induce infringement of one or more claims of the '911 Patent, literally and/or under the doctrine of equivalents;

C. A Judgment that Snap's infringement was willful;

D. An award of damages to adequately compensate Playvuu for Snap's patent infringement, such damages to be determined by a jury, and an accounting to adequately compensate Playvuu for the infringement;

E. A trebling of damages due to Snap's willful infringement;

F. An order finding that this is an exceptional case under 35 U.S.C. § 28 and awarding Playvuu attorneys' fees;

G. Costs and expenses in this action;

H. An award of prejudgment and post-judgment interest;

I. A Judgment that Snap be preliminarily and permanently enjoined from infringing and/or inducing the infringement of the '911 Patent; and

J. Such other further relief, in law or equity, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Playvuu respectfully demands a trial by jury on all issues triable by jury.

Dated: August 24, 2022

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ David J. Tsai*

Attorneys for Plaintiff
Playvuu, Inc.