SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations

STEVEN G. SCHORTGEN, (*pro hac vice*)
sschortgen@sheppardmullin.com
JENNIFER K. AYERS, (*pro hac vice*)
jayers@sheppardmullin.com
2200 Ross Avenue, Suite 2400
Dallas, Texas 75201
Telephone:  469.391.7400
Facsimile:   469.391.7401

SCOTT R. MILLER, Cal. Bar No. 112656
smiller@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398

DANIEL N. YANNUZZI, Cal. Bar No. 196612
dyannuzzi@sheppardmullin.com
ERIC K. GILL, Cal. Bar No. 292548
egill@sheppardmullin.com
DOMINIQUE E. COMBS, Cal. Bar No. 299742
dcombs@sheppardmullin.com
SAMANTHA A. YOUNG, Cal. Bar No. 340318
syoung@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California, 92130-4092
Telephone:  858.720.8900
Facsimile:   858.509.3691

Counsel for Defendant and
Counterclaimant SNAP INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PLAYVUU, INC.,<br><br>                Plaintiff,<br><br>        v.<br><br>SNAP INC.,<br><br>                Defendant. | Case No. 2:22-cv-06019<br><br>**DEFENDANT SNAP INC.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO PLAYVUU'S COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1  SNAP INC.
2             Counterclaimant,
3       v.
4  PLAYVUU, INC.,
5             Counterdefendant.
6

7       Defendant Snap Inc. ("Snap") responds to and answers Plaintiff Playvuu,

8  Inc.'s ("Playvuu") Complaint for Patent Infringement ("Complaint") as follows:

9                          **NATURE OF THE ACTION**

10      1.     Snap admits that Playvuu asserts a claim for patent infringement arising

11  under the patent law of the United States, but denies it has committed any such

12  patent infringement. Snap further denies any and all allegations in the Complaint

13  that are not specifically admitted below. Finally, Snap denies that Playvuu is entitled

14  to relief.

15      2.     Denied.

16      3.     Denied.

17      4.     Snap lacks information sufficient to form a belief as to the truth of

18  Playvuu's allegation that it is the legal owner of the '911 Patent, and on that basis

19  denies that allegation. Snap admits that U.S. Patent No. 10,931,911 ("'911 Patent")

20  issued on February 23, 2021. Snap denies that it committed patent infringement,

21  denies any allegation that the '911 Patent is valid and enforceable, and denies that

22  Playvuu is entitled to injunctive relief and/or money damages. Snap denies any

23  remaining allegations in this paragraph.

24                             **THE PARTIES**

25      5.     Snap lacks information sufficient to form a belief as to the truth of the

26  allegations of this paragraph, and on that basis denies those allegations.

27      6.     Admitted.

28

SMRH:4891-6827-2704.7

## JURISDICTION

7.      Snap admits that the Complaint purports to be an action arising under the patent laws of the United States (35 U.S.C. § 1 *et seq.*). Snap denies that it committed patent infringement, denies any allegation that the '911 patent is valid and enforceable, and denies that Playvuu is entitled to relief.

8.      Snap admits that this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), provided that standing and other requirements are met.

9.      The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is deemed to be required, Snap does not contest that the Court has personal jurisdiction over it for purposes of the instant action only. Snap denies that it committed patent infringement, denies any allegation that the '911 patent is valid and enforceable, and denies that Playvuu is entitled to relief. Snap denies any remaining allegations in this paragraph.

10.     The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is deemed to be required, Snap does not contest that venue is proper for purposes of the instant action only. Snap denies that it committed patent infringement, denies any allegation that the '911 patent is valid and enforceable, and denies that Playvuu is entitled to relief. Snap denies the remaining allegations in this paragraph.

## FACTUAL BACKGROUND

11.     Snap admits that the '911 Patent is entitled "Creating and Disseminating of User Generated Content Over a Network." Snap admits that on its face, the '911 Patent states it was filed on January 15, 2019 as a continuation to Application No. 12/953,350, which published as U.S. Publication No. 2012/0017150. Snap further admits that on its face, the '911 Patent states Application No. 12/953,350 was filed on November 23, 2010 and is now abandoned. Snap further admits that the '911 issued on February 23, 2021. Snap

-3-

further admits that on its face, the '911 Patent lists Shane Pollack as the inventor. Snap lacks information sufficient to form a belief as to the truth of Mr. Pollack's contribution to the invention of the '911 Patent and/or whether others might have also contributed to the invention of the '911 Patent, and on that basis denies that Mr. Pollack is the inventor or is the only inventor of the '911 Patent. Snap admits Exhibit A appears to be a true and correct copy of the '911 Patent. Snap denies the remaining allegations in this paragraph.

12.     Snap lacks information sufficient to form a belief as to the truth of Playvuu's allegation that it is the "owner of all rights, title, and interest in and to the '911 Patent, with the full and exclusive right to bring suit to enforce it," and on that basis denies those allegations. Snap denies the '911 Patent is valid and enforceable, and denies that Playvuu is entitled to relief.

13.     Snap lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

14.     Snap lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

15.     Snap lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

16.     Snap lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

17.     Snap lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

18.     Snap lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

19.     Snap lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

20.     Snap lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

-4-

21.     Snap lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

22.     Snap admits that on its face, the '911 Patent states that Application No. 12/953,350 was filed on November 23, 2010. Snap further admits that on its face, the '911 Patent lists MySongToYou, Inc. as the Applicant. Snap further admits that on its face, the '911 Patent states it is a continuation of Application No. 12/953,350. Snap denies the '911 Patent is entitled to a priority date based upon Application No. 12/953,350. Snap denies any remaining allegations in this paragraph.

23.     Snap lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

24.     Snap admits that on October 5, 2016, Michael Glaser introduced Mr. Pollack to Snap's then Director of Operations and Strategy, Steve Hwang. Snap further admits that following this introduction, Mr. Hwang agreed to meet with Mr. Pollack on October 10, 2016 at Snap's headquarters in Venice Beach. Snap lacks information sufficient to form a belief as to the truth of any allegations relating to Mr. Pollack's state of mind, and on that basis denies those allegations. Snap denies the remaining allegations in this paragraph.

25.     Snap admits that Mr. Pollack and Mr. Sexton met with Mr. Hwang and Ms. Gallucci on October 10, 2016. Snap lacks information sufficient to form a belief as to the truth of all remaining allegations of this paragraph, and on that basis denies those allegations.

26.     Snap admits that Mr. Pollack sent Mr. Hwang and Ms. Gallucci a PowerPoint presentation on October 17, 2016. Snap lacks information sufficient to form a belief as to whether the PowerPoint presentation Mr. Pollack sent to Mr. Hwang and Ms. Gallucci on October 17, 2016, is the same PowerPoint presentation referenced in Paragraph 25 of the Complaint, and on that basis denies the remaining allegations relating to the PowerPoint presentation in this paragraph. Snap admits

-5-

that on October 17, 2016, Ms. Gallucci sent Mr. Pollack an e-mail which stated that Snap "didn't see a fit." Snap denies any remaining allegations in this paragraph.

27.    Denied.

28.    Denied.

## COUNT 1

## (SNAP'S ALLEGED INFRINGEMENT OF THE '911 PATENT)

29.    Snap incorporates by reference its responses to paragraphs 1-28.

30.    Snap admits that it offers the Snapchat application for free download and installation by users. Snap denies it infringes, directly or indirectly, literally and/or by the doctrine of equivalents, individually and/or jointly, the '911 Patent. Snap denies the remaining allegations in this paragraph.

31.    Snap admits that it offers the Snapchat application for free download and installation by users. Snap further admits that the support.snapchat.com website provides information regarding the Snapchat application to users. Snap denies it infringes, directly or indirectly, literally and/or by the doctrine of equivalents, individually and/or jointly, the '911 Patent. Snap denies the remaining allegations in this paragraph.

32.    Snap denies the purported claim chart attached as Exhibit B to the Complaint accurately identifies or otherwise describes Snap's products. Snap denies that the purported claim chart attached as Exhibit B evidences any act of infringement. Snap denies the remaining allegations in this paragraph.

33.    Denied.

34.    Snap admits that Playvuu asserts a claim for patent infringement in its Complaint, but denies that it committed patent infringement, denies any allegation that the '911 Patent is valid and enforceable, and denies that Playvuu is entitled to injunctive relief and/or money damages. Snap expressly denies that the Complaint puts Snap on "notice that it is infringing the '911 Patent." Snap further notes that the

Court dismissed Playvuu's allegation of willful infringement with prejudice on November 17, 2022. (Doc. 31)

35.    Denied.

## PRAYER FOR RELIEF

Snap denies any allegations in Playvuu's Prayer for Relief and denies that Playvuu is entitled to any of the requested relief.

## DEMAND FOR JURY TRIAL

This paragraph sets forth Playvuu's demand for jury trial, to which no response from Snap is required.

## DEFENSES

36.    Pursuant to Federal Rule of Civil Procedure 8(b) and 8(c), without assuming any burden of proof that it would not otherwise bear, without reducing or removing Playvuu's burdens of proof on its claims against Snap, reserving its right to assert additional defenses and/or affirmative defenses, and solely to the extent deemed necessary by the Court to maintain any and all of the following defenses, Snap asserts the following defenses and/or affirmative defenses to Playvuu's Complaint.

## FIRST DEFENSE

37.    Playvuu has failed to state a claim upon which relief may be granted.

## SECOND DEFENSE

38.    Snap has not infringed, directly or indirectly, any valid claim of the '911 Patent, literally or under the doctrine of equivalents. Additionally, Snap has not induced or contributed to a third party's infringement of any valid claim of the '911 Patent, literally or under the doctrine of equivalents.

## THIRD DEFENSE

39.    Each of the claims of the '911 Patent is invalid for failing to comply with one or more requirements for patentability under the Patent Laws of the United States as set forth in 35 U.S.C. §§ 101, et seq., including, but not limited to §§ 101,

102, 103, and 112, and 282. By way of example, and not limitation, the '911 Patent is invalid at least for the reasons set forth in Snap's Motion to Dismiss.

## FOURTH DEFENSE

40.     Pursuant to the requirements of 35 U.S.C. §288 and applicable case law, Playvuu's ability to recover damages and/or costs is limited.

41.     For example, Playvuu has failed to show that it is entitled to indirect/contributory infringement damages before the date of the complaint. Although Playvuu alleges that it told Snap in 2016 that the Playvuu technology was "being patented," the application leading to the '911 Patent was not filed until years later and no subsequent communications between Playvuu and Snap occurred after the date of the patent application (January 15, 2019). Accordingly, Playvuu may not recover damages for alleged indirect infringement prior to the filing of its Complaint.

42.     Playvuu is barred from recovering costs in connection with this action pursuant to 35 U.S.C. § 288.

## FIFTH DEFENSE

43.     Playvuu cannot prove this is an exceptional case justifying an award of attorneys' fees against Snap pursuant to 35 U.S.C. § 285. Snap did not have notice of any alleged infringement until Playvuu served Snap with a copy of the Complaint. Furthermore, Snap does not infringe any valid claim of the '911 Patent.

## SIXTH DEFENSE

44.     For at least the reasons set forth in Snap's Counterclaims, Playvuu's claims are barred, in whole or in part, under principles of equity, including, without limitation, prosecution laches, waiver, and/or unclean hands.

## SEVENTH DEFENSE

45.     As set forth below in Playvuu's Counterclaims, the '911 Patent is unenforceable due to inequitable conduct and/or unclean hands in the prosecution of Application No. 12/953,350 before the U.S. Patent and Trademark Office.

-8-

## COUNTERCLAIMS

1. Counterclaimant Snap hereby alleges the following counterclaims against Playvuu.

## PARTIES

2. Counterclaimant Snap is a corporation organized under the laws of the state of Delaware with its principal place of business at 3000 Donald Douglas Loop North, Santa Monica, California 90405.

3. Upon information and belief, counterclaim-defendant Playvuu, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1312 Aviation Blvd., #103, Redondo Beach, California 90278, and may be served through its counsel of record in this matter.

## JURISDICTION AND VENUE

4. Snap's declaratory judgment counterclaims are based upon the Patent Laws of the United States, Title 35 of the United States Code, Section 101, et seq. This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

5. This Court has personal jurisdiction over Playvuu because, inter alia, Playvuu has submitted to the jurisdiction of this Court by filing this action and purposefully availing itself of the benefits and protections of the laws of the District.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and because Playvuu is asserting claims for patent infringement in this District in response to which these counterclaims are asserted.

## FACTS

7. According to the allegations in Playvuu's Complaint, Playvuu claims certain rights arising under the patent laws of the United States and relating to the '911 Patent.

8. Playvuu asserts in its Complaint that it is the owner of the entire right, title, and interest in the '911 Patent, including the right to sue for, to collect and

-9-

receive damages for past, present, and future infringement, and to seek equitable relief or any other allowable remedy for infringement of the '911 Patent.

9. Playvuu has expressly accused Snap of infringement of the '911 Patent by filing the Complaint. Snap has denied these allegations because Snap's products do not infringe any valid claim of the '911 Patent.

10. For example, claim 1 of the '911 Patent, which Playvuu has accused Snap of infringing in the Complaint, requires: "A method for generating and sharing audio/video content to a social network, comprising: initiating a content creation process in response to a request from a user; prompting the user to record content; prompting the user to select an audio composition from a list of compositions retrieved from a host server; presenting the user with a record button; presenting the user with a selection of visual media content for use as a background, wherein upon selecting an instance of pre-recorded visual media content from the selection, the user is presented with an interface to selectively edit the instance of pre-recorded visual media content; providing simultaneous aural playback of the audio composition during a recording session, thereby permitting the user to hear the composition during recording; generating recorded content based on the recording session by compositing video captured during the recording session with the instance of pre-recorded visual media content, such that the video captured during the recording session is selectively made transparent to reveal the instance of pre-recorded visual media content; displaying a preview of the recorded content to the user, wherein the preview of the recorded content enables the user to change the timing or latency of the recorded content to relative to the selected audio composition; selecting a privacy attribute for the recorded content; sending the recorded content to the host server, wherein the host server is configured to store multimedia content to facilitate access to other users according to the selected privacy attribute; receiving a request to publish the recorded content; in response to the request to publish, processing and encoding individual components of the

-10-

recorded content to create a streamable video; and publishing the streamable video by copying the streamable video to a media server.

11.    Plaintiff's Exhibit B, which purports to be an exemplary claim chart that identifies how the Snapchat application allegedly infringes claim 1 of the '911 Patent, does not identify with specificity how the Snapchat application performs all of these claim limitations. For example, many elements of the claim only contain a screenshot of the Snapchat application with no further explanation as to how the Snapchat application meets the limitation.

12.    The accused Snapchat application does not infringe Claim 1 of the '911 Patent at least because it does not "prompt[] the user to record content." Plaintiff's exemplary claim chart does not provide separate disclosures for this limitation and instead combines it with the allegation that the Snapchat application "initiat[es] a content creation process in response to a request from a user." This combined allegation fails to provide any substantive disclosure with respect to the "prompt[] the user to record content" limitation. The claim chart relies on an image of the Snapchat user interface with the camera button circled. None of the screenshots identify or otherwise disclose any prompts the Snapchat application makes to the user to record content. Instead, the screenshot only suggests that a user has to press the camera button to take a picture or video. Furthermore, this claim limitation is found in all independent claims of the '911 Patent. Therefore, the accused Snapchat application does not infringe any of the '911 Patent's claims.

13.    Playvuu has also expressly alleged that the '911 Patent is valid and enforceable. Snap has denied these allegations.

14.    Prompting and receiving input from a user, recording content, providing audio during a recording session, displaying and transmitting content, processing the content, selecting an attribute for controlling access to content, and storing processed content existed long before the alleged priority date of the '911 Patent. For example, Apple released its video editing software iMovie as early as

-11-

DEFENDANT SNAP INC.S ANSWER, DEFENSES AND COUNTERCLAIMS TO
COMPLAINT; JURY DEMAND

1999. In particular, at least the 2009 version of iMovie had green screen capabilities that allowed users to edit backgrounds in video, add and edit audio recordings, and publish composite videos to streaming websites such as YouTube or Facebook.

15.     Moreover, U.S. Patent Publication No. US 2010/00110082A1 to John D. Myrick et al. ("'082 publication"), with a priority date of October 31, 2008 and a publication date of May 6, 2010, anticipates the '911 Patent. As such, the '911 Patent is invalid under 35 U.S.C. §102. To the extent the '082 publication does not anticipate the '911 Patent, when combined with the other prior art references described in Snap's counterclaims and the knowledge, skill, and experience of a person of ordinary skill in the art, the '911 Patent is invalid under §103.

16.     The '082 publication generally describes "generat[ing] animated movies by recording in real-time (e.g., at a target rate of 30 frames per second) user inputs as the user creates the animation on an image of a stage (e.g., recording mouse positions across a screen or user interface)." '082 publication at [0017]. While generating these animated movies, the system "allows for visual editing of the script file, so that a non-technical user can insert multimedia from a content set onto the stage presented at a user interface, edit corresponding media and files, save the animation file, and share the resulting animated movie." *Id.*

17.     The '082 publication anticipates every limitation of Claim 1 of the '911 Patent.

18.     The '082 publication describes several systems and methods for generating and sharing audio/video content to a social network. For example, the '082 publication describes "generat[ing] animated movies" and "shar[ing] the resulting animated movie" to various locations, including "within a social network." *Id.* at [0017], [0071]. These animated movies can include visual content and audio content.

19.     The '082 publication also discloses "initiating a content creation process in response to a request from a user" as recited in Claim 1. For example,

"generat[ing] animated movies" can involve "recording in real-time (e.g., at a target rate of 30 frames per second) user inputs as the user creates the animation on an image of a stage", causing a script file to be created "the instant an object is brought to the stage presented at a user interface by a user." *Id.* at [0017]. When a user manipulates the animation, the system "initiat[es] a content creation process" that involves recording the user interactions.

20.     The '082 publication also discloses "prompting the user to record content" as recited in Claim 1. For example, the system can "record[] in real-time" by presenting "a user at [a] user interface . . . with a blank stage (i.e., an image of a stage) on which to compose an animation." *Id.* at [0032]. The system can provide various prompts to effectuate this recording, including "prompt[ing] [a user] to select a region of the screen to which [a] special effect will be applied." *Id.* at [0088].

21.     The '082 publication also discloses "prompting the user to select an audio composition from a list of compositions retrieved from a host server" as recited in Claim 1. For example, the '082 publication discloses " pre-created assets "such as multimedia animation clips, audio, background art, and prop art" *Id.* at [0023]. A user can "select a type of audio 3121 (e.g., background, theme, nature sounds, voiceover, and the like), and then a user may select an audio file 312J and drag it onto the stage where the selected audio asset can be heard when a play button is clicked." *Id.* at [0048]. Thus, by way of example, each and every limitation of claim 1 of the '911 Patent is anticipated, inter alia, by the '082 publication and the '911 patent is invalid under 35 U.S.C. §102.

22.     The '911 Patent is invalid under 35 U.S.C. § 102 as anticipated by prior art, including, but not limited to the systems and publications set forth above. Furthermore, to the extent every element is not explicitly or inherently disclosed by the systems or publications above, they, in combination with (1) each other; (2) the knowledge of one of ordinary skill in the art, (3) common sense, or (4) other prior

art that Snap will identify in its Invalidity Contentions that render the asserted claims obvious.

23.    Furthermore, the '911 Patent's specification is not directed to patent eligible subject matter pursuant to 35 U.S.C. § 101. The '911 Patent is directed to an abstract idea as set forth in Defendant's Motion to Dismiss.

24.    The '911 Patent is also unenforceable due to Playvuu's inequitable conduct and/or unclean hands in the prosecution of Application No. 12/953,350 before the U.S. Patent and Trademark Office. The '911 Patent is a continuation of Application No. 12/953,350, which is now abandoned.

25.    On information and belief, individuals subject to the duty of candor under 37 C.F.R.§1.56 ("Applicants"), including without limitation, the listed inventor Shane Pollack, counsel, and Playvuu/MySongToYou, engaged in inequitable conduct and/or unclean hands by misleading the United States Patent and Trademark Office ("USPTO") in connection with reviving prosecution of the '350 Application that led to the '911 Patent.

26.    The misleading petition to revive is inherently material because the '911 Patent's priority claim is dependent on the '350 Application. Since the '350 Application was intentionally abandoned in 2013, the '911 Patent is not entitled to the July 15, 2010 priority date. Furthermore, the '350 Application is prior art that completely anticipates the '911 Patent under 35 U.S.C. § 102(a)(1). Thus, the knowledge withheld by the Applicants that the '350 Application was intentionally abandoned in 2013 was material.

27.    As set forth below, and upon information and belief, the Applicants intended to deceive the PTO by withholding knowledge that the '350 Application was intentionally abandoned.

28.    The '350 Application received a non-final office action on February 15, 2013, rejecting all claims. At the time, law firm Perkins Coie LLP represented the

Applicants in prosecuting the '350 Application. *See* February 15, 2013 Non-Final Office Action at 1.

29.   On August 29, 2013, a Notice of Abandonment was issued. The Notice states "[t]he examiner contacted applicant's representative Cindy Engleheart on 8/23/2013 and confirmed that no response has been sent subsequent to the office action mailed 2/15/2013." *See* Notice of Abandonment at 2. Cindy Engleheart is a member of docketing staff for Perkins Coie LLP.

30.   Ms. Engleheart's confirmation constitutes an intentional abandonment because she deliberately confirmed that there was no response to the office action and did not state that a response was forthcoming.

31.   The PTO did not receive any response for over two years.

32.   On August 14, 2015, the Applicants submitted a Petition for Revival. The statement provided "[t]he entire delay in filing the required reply . . . was unintentional. During prosecution, the patent practitioner responsible for this matter moved offices and, in error and without intention, we closed this application in our docketing system. We recently discovered our docketing error and that the application was abandoned, when the applicant inquired as to the status of the application. We are otherwise unsure why this error continued to persist from the notice of abandonment on 8/29/13 until the recent discovery." Petition For Revival at 2.

33.   On February 9, 2016, the Petition For Revival was granted.

34.   Upon information and belief, Applicants intentionally abandoned the application on August 29, 2013 by confirming that a response was not filed to the non-final office action. As Applicants "deliberately permit[ted] an application to become abandoned . . . the abandonment of such application is considered to be a deliberately chosen course of action, and the resulting delay cannot be considered as 'unintentional' within the meaning of § 1.137(b)." *Rembrandt Techs. LP v. Comcast of Fla./Pa., LP,* 899 F.3d 1254, 1273 (Fed. Cir. 2018). Therefore, the

-15-

Petition for Revival was misleading and intended to deceive the PTO by suggesting that the abandonment was unintentional.

35.     Based on Applicants' behavior, the specific intent to deceive is the single most reasonable inference able to be drawn from the evidence.

36.     Given Playvuu's history, including, but not limited to, the inequitable conduct described above in paragraphs 24-35, this current case against Snap is not a legitimate patent infringement action, but an ill-founded nuisance suit intended to stifle legitimate competition, which supports an exceptional case finding and award of fees incurred by Snap.

## <u>COUNTERCLAIM NO. 1</u>

### <u>(Declaratory Judgment of Non-Infringement of the '911 Patent)</u>

37.     Snap incorporates by reference the allegations set forth in all of the preceding paragraphs of these Counterclaims as if set forth herein in their entirety.

38.     Playvuu alleges that Snap infringes one or more claims of the '911 Patent under 35 U.S.C. § 271, et seq.

39.     For at least the reasons set forth above, Snap does not infringe, directly or indirectly, any claim of the '911 Patent, either literally or under the doctrine of equivalents. Snap also has not induced others to infringe or contributed to the infringement of any claim of the '911 Patent.

40.     An actual case or controversy exists between Snap and Playvuu as to whether or not Snap infringes the '911 Patent.

41.     Snap requests a declaratory judgment that Snap has not infringed and is not infringing the '911 Patent.

42.     Snap requests a declaratory judgment that Snap has not induced others to infringe or contributed to the infringement by others and is not inducing others to infringe or contributing to the infringement by others of the '911 Patent.

43.     For at least the reasons set forth above in these Counterclaims and in Snap's Motion to Dismiss, this is an exceptional case entitling Snap to an award of its attorneys' fees incurred in connection with this action under 35 U.S.C. § 285.

## COUNTERCLAIM NO. 2

### (Declaratory Judgment of Invalidity of the '911 Patent)

44.     Snap incorporates by reference the allegations set forth in all of the preceding paragraphs of these Counterclaims as if set forth herein in their entirety.

45.     Playvuu contends that the '911 Patent is valid.

46.     Each of the asserted claims of the '911 Patent is invalid for failing to comply with one or more of the requirements for patentability under the Patent Laws of the United States as set forth in 35 U.S.C. §§ 101, 102, 103, 112, and 282.

47.     An actual case or controversy exists between Snap and Playvuu as to whether or not the '911 Patent is invalid.

48.     Snap requests a declaratory judgment that the claims of the '911 Patent are invalid.

49.     For at least the reasons set forth above in these Counterclaims and in Snap's Motion to Dismiss, this is an exceptional case entitling Snap to an award of its attorneys' fees incurred in connection with this action under 35 U.S.C. § 285.

## COUNTERCLAIM NO. 3

### (Declaratory Judgment of Unenforceability of the '911 Patent)

50.     Snap incorporates by reference the allegations set forth in all of the preceding paragraphs as if set forth herein in their entirety.

51.     On information and belief, individuals subject to the duty of candor under 37 C.F.R. § 1.56 ("Applicants"), including without limitation the listed inventor Shane Pollack, counsel, and Playvuu/MySongToYou (as the assignment assigning the '911 Patent was filed with the '687 Application), engaged in inequitable conduct and/or unclean hands by intentionally delaying reviving the '350 Application and abandoning the Application, with the intent to deceive the

-17-

United States Patent and Trademark Office ("USPTO"). As a result, the '911 Patent is not entitled to its July 15, 2010 priority claim, and the '350 Application constitutes prior art under 35 U.S.C. § 102 as set forth in paragraphs 24-26 in the Counterclaims section incorporated herein in their entirety.

52.     Upon information and belief, the Applicants intended to deceive the USPTO by misleading the USPTO into believing the delay was unintentional. Thus, Playvuu's inequitable conduct renders unenforceable the entire '911 Patent.

53.     An actual and justiciable controversy exists between the parties with respect to the '911 Patent's enforceability.

54.     Snap requests a declaratory judgment that the '911 Patent is unenforceable.

## SNAP'S DEMAND FOR JURY TRIAL

Snap hereby demands a jury trial as to all issues that are so triable.

## PRAYER FOR RELIEF

WHEREFORE, Snap prays for judgment on its counterclaims against Playvuu as follows:

A.     Judgment in favor of Snap denying Playvuu all relief requested in its Complaint in this action and dismissing Playvuu's Complaint with prejudice;

B.     Judgment in favor of Snap on all of its counterclaims;

C.     Declaration and judgment that Snap has not infringed and is not infringing the '911 Patent, directly or indirectly, literally or under the doctrine of equivalents;

D.     Declaration and judgement that the '911 Patent is invalid;

E.     Declaration and judgment that the '911 Patent is unenforceable;

F.     Judgment that Playvuu take nothing by this action;

G.     Declaration and judgement that this case is exceptional under 35 U.S.C. § 285, and an award to Snap of its reasonable costs, attorneys' fees, and expert fees incurred in this action; and

-18-

H.     Such other relief as the Court may deem just and proper.

Dated:  December 8, 2022

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By: _____
                    /s/ Jennifer K. Ayers
                  JENNIFER K. AYERS

Attorneys for Defendant and Counterclaimant
SNAP INC.

-19-

SMRH:4891-6827-2704.7

DEFENDANT SNAP INC.S ANSWER, DEFENSES AND COUNTERCLAIMS TO
COMPLAINT; JURY DEMAND